96 P.2d 290

## STATE v. BOARD OF COM'RS OF BERNALILLO COUNTY.

### No. 4482.

Supreme Court of New Mexico.

Nov. 21, 1939.

Filo M. Sedillo, Atty. Gen., and George Lougee, Asst. Atty. Gen., for appellant.

Owen B. Marron, Dist. Atty., and Gino J. Matteucci and Donald B. Moses, Asst. Dist. Attys., all of Albuquerque, for appellee.

ZINN, Justice.

The appellant filed its complaint against the appellee, alleging in the first count substance, as follows: On October 14, 1933, Ray Coyle was convicted in the District Court of Bernalillo County of murder in the first degree. On October 18, 1933, he was sentenced to be executed and was remanded to the custody of the sheriff of Bernalillo County to be by him transported to the State Penitentiary and there to be kept in confinement until December 19, 1933, being the date set for his execution. On December 19, 1933, Coyle appealed to this court. Pursuant to 1929 Comp. St. § 105-2532, such appeal amounted to a stay of execution until a final determination of said cause was had from this court. On March 6, 1935 the judgment was affirmed. State v. Coyle, 39 N. Mex. 151, 42 P.2d 770. Pending the determination

of the appeal Coyle was allowed to remain in the custody and care of the State Penitentiary for a period of 484 days.

Appellant alleged in its complaint that during said 484 days Coyle was a charge of the County of Bernalillo under the law, and not of the State of New Mexico, and the appellee therefore is indebted to the appellant in the sum of $484 for the safekeeping of Coyle.

In two additional counts, one relating to Carl Wickman, and one relating to Hyman Roy, the appellant pleaded the identical charge against appellee, only differing as to dates of sentence, remand, appeal and time confined in the State Penitentiary. The appellant demanded compensation of the appellee under similar circumstances and under the same theory and in various amounts. In the case of Wickman, the trial court was reversed but the liability of the appellee was the same under the appellant's theory.

The appellee demurred to the complaint. The demurrer was predicated on the theory that the complaint failed to state a cause of action. The demurrer was sustained. Appellant stood on his complaint and judgment followed from which the appellant appeals.

There is thus presented one question for our determination. Who becomes responsible for the cost of the maintenance of a prisoner in the penitentiary who has been sentenced to death, pending the determination of the appeal, the State or the County?

Comp.St.1929, § 35-321, in part provides, that when a judgment of death is rendered by any court, the warrant of execution must direct the sheriff to deliver the condemned person to the warden of the State Penitentiary, at a time specified in the warrant or order not more than ten days from the date of the judgment of death. This statute was enacted in 1929. L.1929, Ch. 69. Prior thereto, condemned felons were executed by the sheriff of the county where the crime was committed. 1915 Cod., § 1474. The expense of the execution was borne by the county. Ch. 69 changed the method of inflicting the death penalty and not only fixed the place of execution within the walls of the penitentiary, but provided a new method of dealing with condemned prisoners. This is manifest from a reading of Ch. 69, that the Legislature intended to put into operation a new policy relating to the care, not only of persons sentenced to be executed, but also as to such condemned prisoners who are believed to be insane and also as to the procedure relating to condemned female prisoners who are believed to be pregnant.

Sec. 105-2532 provides that appeals in criminal cases have the effect of a stay of *execution*. This does not stay the requirement that whenever the sentence of the district court shall be that of death or imprisonment for life the party convicted shall remain in close confinement until the decision of the Supreme Court shall be pronounced.

Prior to the enactment of Ch. 69 the court could determine what would be a safe

place of confinement. By the enactment of Ch. 69, the court was shorn of that power by implication because by § 35-321 the legislature determined the place of confinement in such cases. This manifests a new policy.

A number of reasons are suggested by a reading of Ch. 69, L.1929, Sec. 4 of the Act (§ 35-324) provides that if "after his delivery to the warden for execution, there is good reason to believe that a defendant, under judgment of death, has become insane, the warden must call such fact to the attention of the district attorney of the county *in which the state penitentiary is situated,* whose duty it is to immediately file in the district court of *such county* a petition, stating the conviction and judgment, and the fact that the defendant is believed to be insane, and asking that the question of his sanity be inquired into. Thereupon it shall be the duty of *said court* to inquire into said question and render judgment thereon." (Italics ours)

It was the intention of the legislature to have prisoners under sentence of death placed "in close confinement" as provided in § 105-2532, in the state penitentiary. The legislature designated the one and only place of close confinement. It would also be more convenient to administer section 4 of the Act (relative to the ascertainment of the mental state of the prisoners) if they were in the state penitentiary. The state penitentiary authorities presumably have available the services of medical men and psychiatrists. This is not true of the majority of the counties. The officials at the penitentiary are better circumstanced to make a study of the mental condition of prisoners than are the jailers in the respective counties. This may have been the background for the enactment of Ch. 69, L.1929. Again, by section 4 of the Act, the proceedings to ascertain the question of sanity of the prisoners are to be conducted in Sante Fe County, in the district court of such county, and initiated by the district attorney of said county.

Prisoners under sentence of death and whose sanity is questioned ought to be present at the inquiry. It would be less expensive when hearings are necessary to have them conducted in the district court of the county in which the penitentiary is situated, perhaps in the walls of the penitentiary itself, than it would to have a prisoner brought from a distant point to the Santa Fe district court or to have the district court and the district attorney of Santa Fe County journey to the place where the prisoner was, if confined in one of the county jails. Under § 5 (§ 35-325), the district attorney must attend the hearing and may produce witnesses before the court. Such witnesses would probably be persons who had had the prisoner under observation and it would be more convenient to employ witnesses who were convenient to the place of hearing.

Sec. 8 of the Act (§ 35-328) provides that if there is good reason to believe that a female against whom a judgment of death is rendered is pregnant, such proceedings

must be had as are provided in § 4 of the Act, except that the court may summon three disinterested physicians in good standing in their profession to inquire into the supposed pregnancy, etc.

It is not contended by appellant that the district judge of Bernalillo County had any option in the matter of selecting a place for close confinement of the prisoners. This is definitely mandatory under § 35-321.

The legislature did not *merely* designate a place of close confinement but by the other provisions of the Act, we are warranted in assuming that if under § 105-2532, the district court or any of the law officers who theretofore had discretionary power to determine the place of close confinement, then that much of said section was repealed by Ch. 69 and that we have a right to assume that the legislature by this new and complete system enacted in 1929 surveyed the advantages to the public and considerations of justice to the unfortunate prisoner, and assumed entire jurisdiction and control over persons against whom a sentence of death had been pronounced and assumed the consequent liability for the expenses of administering the Act as a matter of statewide concern. That it is a matter of statewide concern is not out of line with good reason. Every county in the state, or the people of the state, are interested that the place of "close confinement" mentioned in § 105-2532, be such a place as is in reality a place where the opportunities for escape are reduced to a minimum, and thus those who have been found unable to control their passions may not procure an opportunity to commit similar crimes contrary to the peace and dignity of the people of New Mexico. Likewise, as the Act provides a policy of justice and mercy outlined in the Act to prevent insane persons or pregnant women from being executed, this is a matter of statewide concern.

So far as the matter of dollars and cents is concerned as to which would be the better policy would probably be none of our concern, but even then we believe that over the course of a long period of time the taxpayers of the state generally would not have to pay any more out of their pockets if the state penitentiary bears the expense than if the respective counties did so.

The case of State v. Board of County Commissioners of Colfax County, 33 N.M. 340, 267 P. 72 is not applicable. That decision did not involve prisoners who had been condemned to death, and was handed down on April 18, 1928, before the enactment of Ch. 69.

The judgment of the trial court should be and is hereby affirmed.

It is so ordered.

BICKLEY, C. J., and BRICE, SADLER, and MABRY, JJ., concur.